# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL AARON STUKER,<br><br>Defendant. | Cause No. CR 11-97-BLG-RFC<br><br>**ORDER** |

## I. INTRODUCTION

Defendant Michael Aaron Stuker was charged in a two-Count Indictment with assaulting two federal officers with a deadly weapon in violation of 18 U.S.C. §§ 111(a) & (b). *Doc. 1.* Count I related to Deputy U.S. Marshal Daquiri Tofte and Count II related to Deputy U.S. Marshal Timothy Hornung. Both alleged assaults occurred seconds apart as Stuker was attempting to evade arrest in a Volkswagon Passat in a trailer park in Lockwood, Montana.

On February 28, 2012, a jury convicted Stuker of assaulting Deputy Marshal Tofte with a deadly weapon, but acquitted Stuker of assaulting Deputy Marshal Hornung. *Doc. 31.* Pending before the Court is Stuker's Motion for Judgment of Acquittal or, In the Alternative, New Trial As To Count I. *Doc. 42.* The Government opposes the motion. As there was sufficient evidence to convict, the motion must be

denied.

## II. ANALYSIS

In addressing Stuker's Rule 29 motion for judgment of acquittal, the Court considers "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Rizk,* 660 F.3d 1125, 1134 (9th Cir. 2011) *quoting Jackson v. Virginia,* 443 U.S. 307, 319 (1979). This Court must consider the elements of the crime of which Stuker was convicted and how a rational jury could view the evidence presented thereon. *Id.*

Stuker argues the verdict on Count I is unsupported by the evidence. Specifically, he argues that the only difference between the assault on Tofte, for which he was convicted, and the assault on Hornung, for which he was acquitted, is that his Passat made contact with Tofte's car, whereas no contact was made with Hornung or his car. Stuker further argues that because the evidence was that the airbag in Tofte's vehicle did not deploy, Tofte was not injured, and no part of Tofte's body made any contact with his car, a reasonable juror could not find him guilty because there was no actual physical contact.

Regardless, as the jury was instructed, physical contact is not required. At the close of the evidence, the jury was properly instructed pursuant to the Ninth Circuit

Model Jury Instructions. In order to find Stuker guilty of assaulting Tofte with a deadly weapon, the jury was required to find as follows:

> First, the defendant forcibly assaulted Deputy United States Marshal Daquiri Tofte; and
>
> Second, the defendant did so while Deputy United States Marshal Daquiri Tofte was engaged in, or on account of his official duties; and
>
> Third, the defendant used a deadly or dangerous weapon.
>
> There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or makes a threat coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm.
>
> A motor vehicle is a deadly or dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury.

*Doc. 35, p. 14,* Instruction No. 13; 9th Cir. Crim. Jury Inst. 8.4.

As it was well-established that Tofte was engaged in his official duties, the second element is not contested. Primarily, Stuker argues that under *United States v. Arrington,* the use of a car purely for flight does not mean that the car is used as a deadly weapon. 309 F.3d 40, 46 (D.C. Cir. 2002). But as in *Arrington,* there was evidence admitted from which a reasonable jury could find that Stuker used the car as a deadly weapon and not simply as a mode of transportation.

Deputy Marshal Tofte testified that in the early morning hours of July 29, 2011,

he and Deputy Marshal Hornung were acting on a tip that Stuker would be arriving at the Eastgate Village in Lockwood, Montana in a Volkswagon Passat at approximately 4 or 4:30 in the morning. *Doc. 47,* Trial Transcr. Vol 1, 54:11 - 24 (Feb. 27, 2012). The Deputies hatched a plan to wait at the entrance for Stuker to arrive and use the concrete barriers at Eastgate Village and their vehicles to surround the Passat and prevent it from escaping. *Id.*, at 55:2 - 8. When Tofte saw the Passat, he was to radio Hornung, who would activate his vehicle lights and approach with his Chevy Trailblazer to block one side, and then Tofte and a marked police car would come in from the back. *Id.*, at 57:18 - 2 2.

When Tofte saw the Passat he radioed Hornung and set the plan in motion. *Id.*, at 57:23- 58:1. Tofte was pulling into position in his Jeep Cherokee with lights flashing, but he stopped when he saw the Passat backing towards him. *Id.,* at 60:3 - 13. The Passat then stopped momentarily before it "rapidly accelerated into [his] vehicle." *Id.,* at 60:14 - 18. When the Passat stopped, Tofte anticipated a foot chase so he got ready to bail out, but when the Passat rapidly accelerated toward him it appeared it was going to try to ram his Cherokee out of the way. *Id,* at 70:19 - 23.

After making contact with Tofte's Cherokee, the Passat moved forward toward Hornung, who was standing beside his Trailblazer, *Id.,* at 60:19 - 61:8. Although the Passat started off directly at Hornung's Trailblazer, it made an abrupt left turn and

4

narrowly missed Hornung and his car. *Id.*, at 61:16 - 20. Tofte pursued the Passat as it raced through the trailer park before it lost control and slid through a fence. *Id.*, at 61:23 - 64:7. Stuker was found driving the Passat and was arrested. *Id.,* at 62:14 - 21, 64:1 - 2. The direct hit from Stuker's Passat pushed the grill guard back one and a half inches. *Id.,* at 64:23 - 65:18. Tofte expected the impact to cause extensive damage, but he was surprised to see it was mostly intact. *Id.,* at 71:9 - 14. Tofte testified that he feared immediate bodily harm from the impact and was also concerned that his airbag would deploy, knock him unconscious, and render him unable to defend himself. *Id.*, at 71:1 - 18.

When this evidence is viewed in the light most favorable to the prosecution, the Court has no trouble concluding that a rational jury could have found all the elements of the crime beyond a reasonable doubt. By rapidly accelerating the Passat into Tofte's Cherokee, Stuker threatened injury to Tofte. And Tofte testified that he feared he would be injured. Since Tofte had his lights flashing in the dark and Stuker stopped and then rammed into Tofte, the jury could also conclude that Stuker did not back into Tofte by accident. A reasonable jury could easily conclude that by rapidly accelerating into Tofte's Cherokee, Stuker had an apparent ability to injure Tofte and used his Passat as a deadly weapon.

In the alternative, Stuker argues that if acquittal is not warranted, the Court

5

should order a new trial pursuant to Rule 33 Fed.R.Crim.P. But, as demonstrated above, there was sufficient, credible evidence for the jury to find Stuker guilty beyond a reasonable doubt and there is no reason for a new trial.

### **III. ORDER**

Accordingly, **IT IS HEREBY ORDERED** that Stuker's Motion for Judgment of Acquittal or, In the Alternative, New Trial As To Count I (*doc. 42*) is **DENIED**.

Dated this 19th day of April, 2012.

*/s/ Richard F. Cebull*_____
Richard F. Cebull
United States District Judge